Filed 8/8/22  P. v. Singleterry CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN FERDINAND SINGLETERRY,<br><br>    Defendant and Appellant. | D079726<br><br><br>(Super. Ct. No. INF2000092) |

APPEAL from a judgment of the Superior Court of Riverside County, Dale R. Wells, Judge.  Sentence vacated and remanded for resentencing.

Matthew R. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Natasha A. Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found John Ferdinand Singleterry guilty of one count of assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)

(count 1);[1] one count of assault with a deadly weapon (knife) (§ 245, subd. (a)(1)) (count 2); one count of false imprisonment by violence or menace (§ 236) (count 4); two counts of failure to stop at the scene of an accident (Veh. Code, § 20002, subd. (a)) (counts 5 and 6); and one count of resisting an officer (§ 148, subd. (a)(1)) (count 7). With respect to count 1, the jury made a true finding that Singleterry personally inflicted great bodily injury. (§ 12022.7, subd. (a).) In August 2021, the trial court sentenced Singleterry to a prison term of seven years, eight months, which included an upper term four-year sentence for the aggravated assault conviction in count 1, plus three years for the great bodily injury enhancement, and an eight month sentence for the false imprisonment conviction in count 4.

Singleterry contends (1) the sentence on the false imprisonment conviction in count 4 should be stayed pursuant to section 654 because it was part of an indivisible course of conduct with the two assault convictions in counts 1 and 2; and (2) this case should be remanded for the trial court to apply the amendments to section 1170 that took effect on January 1, 2022, which narrow the trial court's discretion to impose an upper term sentence (§ 1170, subd. (b)(1)-(3)). The People concede the first point, but they argue as to the second point that any error caused by the application of the prior version of section 1170 in sentencing Singleterry was harmless.

We conclude that both of Singleterry's arguments have merit. Accordingly, we vacate Singleterry's sentence, and we remand to the trial court with directions that it resentence Singleterry under the amended version of section 1170 and that it stay the sentence on count 4.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Singleterry and A. were in a dating relationship when Singleterry became violently jealous while he was driving A. in A.'s car. Singleterry pulled over the car and began punching A. in the face multiple times. During the assault, A. reached for the car door several times to try to escape, but Singleterry threatened her, saying "Reach for it again," and hit her. Singleterry took out a pocketknife and held it to A.'s neck, saying that he would kill her.

A. was able to escape from the car when a man came up to talk to Singleterry at the driver's side window. As A. ran from the car, Singleterry accelerated toward her, hitting a parked car with so much force that the parked car crashed into the car in front of it. Singleterry abandoned A.'s car in the middle of the street and ran away.

A. was taken to the hospital, where she was found to have suffered, among other things, a head injury, facial trauma, contusions, and a left orbital wall fracture. As a result of the assault, A. suffered from lasting negative effects to her eyesight, as well as recurrent headaches.

After a warrant was issued for Singleterry's arrest, he fled from police as they tried to apprehend him, but he was eventually taken into custody.

Singleterry was charged with one count of assault by force likely to produce great bodily injury (§ 245, subd. (a)(4)) (count 1), with the further allegation that he personally inflicted great bodily injury (§ 12022.7, subd. (a)); two counts of assault with a deadly weapon (§ 245, subd. (a)(1)), with one of those counts identifying a knife as the deadly weapon (count 2), and the other of those counts identifying a vehicle as the deadly weapon (count 3); one count of false imprisonment by violence or menace (§ 236) (count 4); two

counts of failure to stop at the scene of an accident (Veh. Code, § 20002, subd. (a)) (counts 5 and 6); and one count of resisting an officer (§ 148, subd. (a)(1)) (count 7). A jury found Singleterry guilty on all counts except for count 3 (assault with a deadly weapon using a vehicle), and it made a true finding on the enhancement for count 1.

On August 20, 2021, the trial court sentenced Singleterry to prison for a term of seven years, eight months. The sentence was comprised of an upper term sentence of four years on count 1 as the principal term, plus three years for the great bodily injury enhancement, and a term of eight months for the false imprisonment conviction in count 4. The terms for all of the remaining counts were either stayed pursuant to section 654 or were ordered to run concurrently.

## II.

## DISCUSSION

A.  *The Sentence on the False Imprisonment Conviction in Count 4 Must Be Stayed Pursuant to Section 654*

Singleterry's first contention is that pursuant to section 654, the trial court should have stayed the eight-month sentence that it imposed for the false imprisonment conviction in count 4.

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law" shall not "be punished under more than one provision." (§ 654, subd. (a).) As relevant here, section 654 bars multiple punishment in "cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.] [¶] It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] . . . [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant

4

may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)

Singleterry's conviction for false imprisonment in count 4 was based on his conduct of threatening A. and hitting her when she repeatedly attempted to leave the car during the assault. Singleterry argues that the trial court erred in not staying the sentence on the false imprisonment count because "[t]he false imprisonment was incidental to, and facilitated, the assault." We apply a substantial evidence standard of review. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717 [an implied finding on whether "the crimes were divisible . . . must be upheld if supported by substantial evidence."].)

The People concede that the trial court erred in not staying the sentence for the false imprisonment conviction pursuant to section 654. We accept the concession, as Singleterry's argument has merit. The undisputed evidence showed that Singleterry had the objective of facilitating his continued assault of A. when he repeatedly prevented A. from leaving the car while he was punching her in the face, holding a knife to her throat and threatening to kill her. Thus, the false imprisonment was "merely incidental to, or w[as] the means of accomplishing or facilitating" the assault. (*Harrison*, *supra*, 48 Cal.3d at p. 335.) As the People properly conclude, "[s]ubstantial evidence does not support the trial court's implied conclusion that [Singleterry] harbored a separate intent and objective on count four than he did on counts one and two." The eight-month sentence for the false imprisonment conviction in count 4 therefore must be stayed pursuant to section 654.

B.    *Remand Is Required to Allow the Trial Court to Resentence Singleterry According to the Amended Version of Section 1170*

We next turn to Singleterry's contention that we should vacate the sentence and remand this matter so that he may be sentenced according to

the amended version of section 1170, which became effective after the trial court imposed sentence.

Effective January 1, 2022, section 1170 was amended. (See Sen. Bill No. 567 (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2021-2022 Reg. Sess.); Stats. 2021, ch. 695, § 5.) As relevant here, under the amended statute, a court must "order imposition of a sentence not to exceed the middle term," except under limited circumstances. (§ 1170, subd. (b)(1).) A court may depart from the presumptive middle term to impose an upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).) Nevertheless, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

Here, the trial court selected an upper term sentence for the principal count of aggravated assault in count 1. Singleterry contends that the amendments to section 1170 apply retroactively to him, as his conviction is not yet final, and thus his upper term sentence is in error because it was not reached based on the current version of the statute.

The People properly agree that the amendments to section 1170 apply retroactively to Singleterry. (See *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*) ["The People properly concede that Senate Bill No. 567's ameliorative amendments to section 1170, subdivision (b) apply retroactively to all cases not yet final as of January 1, 2022."].) However, the People contend that we need not vacate the sentence and remand for resentencing

because the trial court's application of the former version of section 1170 was harmless error. We therefore turn to the issue of harmless error.

In explaining why it chose an upper term sentence, the trial court cited the following factors in aggravation:

> "With respect to the sentence, the factors effecting the sentence, circumstances [in] aggravation relating to the crime, he was armed with or used a weapon at the time of the commission of the crime. The victim was particularly vulnerable. The defendant took advantage of position of trust or confidence to commit the offense.
>
> "Factors relating to the defendant, he has engaged in violent conduct that indicate[s] a serious danger to society. His prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness. [¶] The defendant has served a prior term in prison or county jail under section 1170[, subdivision ](h). The defendant was on probation, mandatory supervision, post release community supervision or parole when the crime was committed. The defendant's prior performance other than probation or mandatory supervision, post release community supervision or parole was unsatisfactory. . . . There are no circumstances [in] mitigation as to either the crime or the defendant."

Under the current version of section 1170, the trial court could not have relied on many of the aggravating factors that it cited because the facts underlying those factors were not stipulated to by Singleterry or were not "found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial" (§ 1170, subd. (b)(2)). Further, with respect to the criminal history cited by the trial court, there is no indication in the record that the trial court was presented with "certified record[s] of conviction" (*id.*, subd. (b)(3)), rather than relying on the summary of Singleterry's criminal history in the probation officer's report. Based on the evidence before the trial court (and assuming the court did not consider certified records of conviction), the

7

only aggravating factor that would be permissible under the current version of section 1170 is that Singleterry "was armed with or used a weapon at the time of the commission of the crime." That fact was found beyond a reasonable doubt at trial because the jury made a finding that Singleterry committed an assault *with a knife* in count 2.

In *Lopez*, we explained the two-step inquiry that applies when evaluating whether it was prejudicial error to sentence a defendant under the prior version of section 1170. (*Lopez, supra*, 78 Cal.App.5th at pp. 465-468.)

"[T]he initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term." (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11.)[2]

Next, if the answer to the first question is "no," but the trial court has cited *some* aggravating factors that would be permissible under the current

---

[2]    As we have explained, the current version of section 1170 states that "the court may consider the defendant's prior convictions in determining sentencing *based on a certified record of conviction* without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3), italics added.) Thus, although *Lopez* does not expressly focus on the issue (*Lopez, supra*, 78 Cal.App.5th at pp. 465-468), it is logical to conclude that when the trial court has relied on the defendant's prior convictions to determine the existence of certain aggravating factors, but has not actually reviewed certified records of conviction to do so, the relevant harmless error inquiry is whether, if the trial court were to review the certified records of conviction, it would still be able to make the same finding as to those aggravating factors.

version of section 1170, "the second relevant prejudice question is whether we can be assured that the trial court *would have exercised its discretion to impose the upper term* based on" whatever *permissible* aggravating factors it cited, even though it "originally relied on both permissible and impermissible factors in selecting the upper term." (*Lopez, supra*, 78 Cal.App.5th at p. 467.) In that context, the inquiry is "whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance" on the impermissible factors. (*Ibid*.) If we "cannot conclude that the trial court would have selected an upper term sentence based on . . . some constellation of permissible aggravating factors," we must "conclude that remand is required to allow the trial court the opportunity to exercise its discretion to make its sentencing choice in light of the recent amendments to section 1170." (*Lopez*, at p. 468.)

Here, as to the first inquiry, the People acknowledge that, assuming for the sake of argument that *Lopez* accurately states the harmless error analysis, "there is no evidentiary basis in this case to determine whether a jury would have found every factor relied upon by the court to be true beyond a reasonable doubt." We concur with that assessment. Here, as in *Lopez*, "[b]ecause the prior version of the Determinate Sentencing Law did not require the prosecution to present evidence directly related to the aggravating factors at trial, the evidence in the record does not permit us to assess whether a jury would have found these factors true beyond a reasonable doubt. Further, [the defendant] would have had no reason to present evidence that might have contradicted evidence supporting truth of the facts underlying the aggravating factors relied on by the trial court. As a result, we cannot say that as to every factor 'the evidence supporting that factor is overwhelming and uncontested, and there is no "evidence that could

9

rationally lead to a contrary finding." [Citation.]' . . . It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true in connection with these factors." (*Lopez, supra,* 78 Cal.App.5th at p. 466.) This observation applies to several of the aggravating factors relied upon by the trial court, including that "[t]he victim was particularly vulnerable," Singleterry "took advantage of position of trust or confidence to commit the offense," and Singleterry "engaged in violent conduct that indicate[s] a serious danger to society."[3]

With respect to the second inquiry under *Lopez,* the People contend that Singleterry cannot establish prejudice because the trial court's sentencing choices show that it would have chosen to impose an upper term sentence, *even if* it were only to consider the remaining permissible aggravating factor that Singleterry "was armed with or used a weapon at the

---

[3] We note that since we issued *Lopez,* our colleagues in the Third and Fifth Districts have generally agreed with *Lopez'*s harmless error approach but have taken issue with our application of the beyond a reasonable doubt standard from *Chapman v. California* (1967) 386 U.S. 18 in formulating the first step of the inquiry. (*People v. Dunn* (2022) __ Cal.App.5th __, __ [2022 WL 2828730, at pp. *7-*8]; *People v. Zabelle* (2022) __ Cal.App.5th __, __ [2022 WL 2663754, at p. *8].) In *Lopez,* we stated the first-step inquiry as whether a reviewing court can "conclude *beyond a reasonable doubt* that a jury would have found true beyond a reasonable doubt *every* factor on which the court relied." (*Lopez, supra,* 78 Cal.App.5th at pp. 465-466, italics added and omitted.) Our colleagues suggest that the *reasonable probability* standard for state law error from *People v. Watson* (1956) 46 Cal.2d 818, 836 has some applicability. (*Dunn,* at pp. ___ [2022 WL 2828730, at pp. *7-*8]; *Zabelle,* at p. __ [2022 WL 2663754, at p. *8].) Here, even were we to apply the *Watson* standard in conducting the first step of the inquiry set forth in *Lopez,* we would reach the same result. Under either *Watson* or *Chapman,* "[i]t would be entirely speculative for us to presume . . . what a jury would have found true." (*Lopez,* at p. 466.)

time of the commission of the crime." The People point to the fact that the sentence in count 2 for assault with a deadly weapon (knife) (§ 245, subd. (a)(1)) was stayed pursuant to section 654. They contend that since the use of the knife *was not otherwise being punished*, the trial court would have relied on the aggravating factor of that knife use (i.e., that Singleterry "was armed with or used a weapon at the time of the commission of the crime") to impose an upper term sentence.[4]

We are not persuaded by the People's argument. Although it is *possible* that the trial court would have decided that Singleterry's use of a knife, alone, warranted a departure from a presumptive middle term, the trial court offered no indication that it would have selected an upper term sentence based solely on that aggravating factor. As in *Lopez*, this conclusion is particularly warranted "given that the court relied on a long list of aggravating factors in selecting the upper term." (*Lopez, supra*, 78 Cal.App.5th at p. 468.) Based on the sentencing record, we conclude it is reasonably probable that the trial court will exercise its discretion on remand to impose the presumptive middle term sentence now identified in the current version of section 1170, rather than to depart from the presumption

---

[4] In connection with this argument, the People point to a statement by the trial court that "I believe the punishment I have given as my indicated is the maximum punishment I could impose." The trial court's statement that it was imposing the maximum punishment was made in the context of explaining that it could not, as the People suggested, impose the sentences for both count 1 and count 2 because that approach was precluded by section 654. We do not understand the trial court's statement to indicate that it would, in any circumstance, impose an upper term sentence for the principal count, even if additional aggravating factors were not present.

11

and impose an upper term sentence.  Accordingly, we will remand to the trial court to apply the current version of section 1170.[5]

DISPOSITION

The sentence is vacated and this matter is remanded for resentencing. On remand, the trial court shall apply the current version of section 1170, and it shall stay the punishment imposed for the conviction in count 4.


IRION, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.

---

[5]     As we explained in *Lopez,* "[o]n remand, the People may elect to proceed under the requirements of the newly-amended version of section 1170, subdivision (b), which would permit the People to prove the existence of aggravating factors beyond a reasonable doubt to a jury, unless the defendant waives the right to a jury and agrees to have the factors decided by the court beyond a reasonable doubt; alternatively, the People may accept resentencing on the record as it stands." (*Lopez, supra,* 78 Cal.App.5th at p. 468.)